[Nos. 12950, 12956.  Department One.  October 19, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Frank Nixon et al., Plaintiff*, v. THE SUPERIOR COURT FOR PACIFIC COUNTY, *Edward H. Wright, Judge, Respondent*.[1]

VENUE—CHANGE—BIAS OF JUDGE—"PARTIES"—CREDITORS IN RECEIVERSHIP. In an action by the state on the relation of the *Attorney General*, against an insolvent banking corporation, as defendant, asking for the appointment of a receiver, creditors interested in the receivership are not "parties" to the action within the meaning of 3 Rem. & Bal. Code, §§ 209-1, 209-2, providing for a change of judges in case the trial judge is prejudiced against any "party" appearing in the action; and hence are not entitled to disqualify a judge on account of bias.

SAME—CHANGE—BIAS OF JUDGE—TIME OF APPLICATION. 3 Rem. & Bal. Code, § 209-2, authorizing a party to disqualify the judge before whom an action is pending by filing an affidavit of prejudice, contemplates that the application must be timely made; and upon an issue as to the removal of a receiver who had been appointed, an application is not timely where the creditor asking the same had previously requested the appointment of another person as receiver, and had been refused.

SAME — CHANGE — BIAS OF JUDGE—COLLATERAL PROCEEDINGS. A judge may not be disqualified to try a pending receivership proceeding by an affidavit of prejudice filed in some proceeding collateral to the receivership.

Applications filed in the supreme court July 23 and 29, 1915, for writs of mandate to compel the superior court for Pacific county, Edward H. Wright, J., to grant a change of judges in receivership proceedings.  Denied.

[1]Reported in 152 Pac. 1.

*Peters & Powell*, *C. B. White*, *Bridges & Bruener*, and *Robt. G. Chambers*, for relators.

*Lockerby & Couden*, for respondent.

MOUNT, J.—These are two applications for writs of mandate, to require the respondent judge to grant a motion for a change of judge upon the hearing of exceptions of creditors to the report of a receiver, "and for a change of judge in all other proceedings hereafter to be had in the receivership action." The two applications were heard together, and will be considered together in this opinion.

It appears that, on October 6, 1914, the state, upon the relation of the *Attorney General*, filed a complaint against the Raymond Trust Company, in the superior court for Pacific county. That action resulted in the appointment of one A. W. Hammond as receiver for the Raymond Trust Company, an insolvent banking corporation. The receiver thereafter duly qualified and has ever since been acting as such receiver.

Prior to the appointment of the receiver, a petition, signed by a considerable number of depositors and creditors of the Raymond Trust Company, was presented to the judge, asking that one Reed be appointed as such receiver. The judge declined to appoint Mr. Reed, and appointed Mr. Hammond. Thereafter, on October 8, 1914, a meeting of the creditors was held. The judge was invited to this meeting and was present. He was then requested to remove Mr. Hammond and appoint Mr. Reed as receiver. This request was also refused.

Thereafter a number of orders, *ex parte* and upon hearing in open court, were made and entered by the court. Afterwards, on June 25, 1915, another request was made for the removal of Mr. Hammond as receiver. This request was also denied. Thereafter, on July 19, 1915, the relators in this proceeding filed with the clerk of the superior court for Pacific county a petition for the removal of the receiver, and

at the same time filed an affidavit of prejudice. This affidavit was made by Mr. Nixon, who stated, in substance, that he was one of the creditors of the Raymond Trust Company, insolvent, and that the judge was prejudiced against the affiant and other creditors of the Raymond Trust Company so that such creditors could not have a fair and impartial trial before such judge. This motion was denied. Thereafter an application was made to this court for a writ of mandate.

Afterwards the receiver filed a report of his doings as such receiver, and a time was fixed for the hearing upon the report, when the same creditors filed exceptions to the report and again filed a motion for change of judge. This motion was also denied, and another application was made to this court for another writ of mandate.

The respondent makes two contentions in this court why the writ of mandate should not issue, to the effect that, first, the relators are not parties to the receivership proceedings, and are therefore not authorized to disqualify the judge; and second, that the application for change of judge was not timely made.

The statute provides at 3 Rem. & Bal. Code, § 209-1:

"No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established, as hereinafter provided, that such judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. . . ."

3 Rem. & Bal. Code, § 209-2, provides:

"Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge; Provided, further, that no party or attorney shall be permitted to make more than one application in any action or proceeding under this act."

It is plain that the relators here were not named as parties in the original receivership case. The plaintiff in that case was the state of Washington upon the relation of the *Attorney General*. The defendant was the Raymond Trust Company, an insolvent banking corporation. While the creditors of the banking corporation are no doubt interested in the result of the receivership proceeding, they are not parties to that action. They are at most quasi parties, interested only in the proceeds of the assets of the insolvent corporation.

In the case of *Wooding v. Wooding & Co.*, 10 Wash. 531, 39 Pac. 137, this court said:

"And this leads us to scan the method by which the appellants have sought to set aside the order appointing this receiver. Creditors are not made parties to such actions, and appellants were not parties in this case. They were not intervenors, because the statute governing interventions does not cover such cases, and because they took none of the steps prescribed for the accomplishment of an intervention."

And in *Churchill v. Stephenson*, 14 Wash. 620, 45 Pac. 28, this court said:

"In an action of this character the interest of a mere general or contract creditor is not of such a direct and immediate character as entitles him to intervene."

In 34 Cyc. at page 343, the rule is stated as follows:

"Interventions by persons interested in the funds of a receivership will not be permitted if their rights may be conserved without it, since such interventions multiply the number of litigants, and, if begun in the case of one creditor, cannot be consistently denied as to others, thereby resulting in unnecessary expense and confusion of proceedings."

It is plain, we think, that the relators are not parties to the receivership proceeding, and are therefore not authorized to disqualify the judge in the discharge of his duties as judge in the case where the receiver was appointed.

We are of the opinion, further, that the relators have not made timely application for a change of judge. We have no

doubt of the right of creditors of an insolvent corporation to petition the court appointing a receiver to remove him for cause, even though they are not named as parties in the proceeding. We think their interest is such that a petition may be filed and heard by the court. But we have held that applications for a change of judge must be timely made. In *State ex rel. Lefebvre v. Clifford*, 65 Wash. 313, 118 Pac. 40, in discussing the provisions of the statute with reference to the right to a change of judge, we said:

"If literally construed, the right would exist at any time prior to the entering of the judgment. But to place such a construction on the law is to charge the law-making power with an intention to cripple and handicap the courts in their attempted enforcement of the law, to an intolerable extent. Hence the necessity of construction; and. construing the law and attempting to ascertain its meaning, we cannot conclude that it was intended by the act that a party could submit to the jurisdiction of the court by waiving his rights to object until by some ruling of the court in a case he becomes fearful that the judge is not favorable to his view of the case. In other words, he is not allowed to speculate upon what rulings the court will make on propositions that are involved in the case and, if the rulings do not happen to be in his favor, to then for the first time raise the jurisdictional question."

In *Garvey v. Skamser*, 69 Wash. 259, 124 Pac. 688, we said:

"On the presentation of the motion and affidavit, it was the imperative duty of the judge to transfer the case to another department. His duty to do so depended upon the statute, and not upon the consent of opposing counsel. He could only deny the application on the ground that it was not timely. *State ex rel. Jones v. Gay*, 65 Wash. 629, 118 Pac. 830; *State ex rel. Lefebvre v. Clifford*, 65 Wash. 313, 118 Pac. 40."

See, also, *Fortson Shingle Co. v. Skagland*, 77 Wash. 8, 137 Pac. 304; *State ex rel. Deavers v. French*, 78 Wash. 260, 138 Pac. 869; *Nance v. Woods*, 79 Wash. 188, 140 Pac. 323; *State ex rel. Stevens v. Superior Court*, 82 Wash. 420, 144 Pac. 539.

In the latter case we said:

"In the case at bar, when the respondent judge expressed an opinion unfavorable to the relator, she caused the order to be discharged. A few days later she commenced a new proceeding of the same kind, which was assigned to the respondent judge for trial. She then sought a change of judges by filing an affidavit of prejudice. In short she sought to accomplish by indirection that which she could not have obtained on the hearing of the first order after the judge had expressed an opinion adverse to her claim. If the affidavit had been filed on the first hearing during the progress of the hearing at the time the judge announced his view, it would not have been timely. Upon the peculiar facts, we think the case is controlled by the *Lefebvre* case."

In this case, while these relators have made no formal appearance in the action, they and others, prior to the appointment of the receiver, had personally requested the judge to appoint another person receiver. This request was repeated upon two or three occasions thereafter. The judge, when these requests were made, denied the same. It is apparent that the relators requested these opinions of the judge in advance for the purpose of determining how he would rule upon an application for a removal of the receiver. In other words, the relators sought and obtained the opinion of the court, and now seek to disqualify him by reason of the opinion expressed.

In addition to the reasons already stated above, we are satisfied that the judge may not be disqualified to try a pending receivership proceeding to final judgment when one or a portion of the creditors interested in the receivership made an affidavit that he is disqualified in some proceeding collateral to the receivership. If this may be done by one creditor, it may be done in turn by other creditors against another judge who may be called in, and interminable confusion would necessarily result. We are clear that it was not the intention of the legislature to permit, in collateral proceedings, persons who may be interested in the result of litigation when they are

not actual parties thereto, to disqualify a judge by means of an affidavit of prejudice.

For these reasons, both applications are denied.

PARKER, MAIN, and HOLCOMB, JJ., concur.