74 P.3d 642 (2003)
150 Wash.2d 59
STATE of Washington, Respondent,
v.
David D. TARABOCHIA, Petitioner.
No. 72918-2.
Supreme Court of Washington, En Banc.
Argued June 24, 2003.
Decided August 21, 2003.
Law Offices of Monte E. Hester, Wayne Fricke, Tacoma, for Petitioner.
Fred A. Johnson, Wahkiakum County Prosecutor, Cathlamet, for Respondent.
BRIDGE, J.
In one-judge Wahkiakum County, David Tarabochia pleaded guilty to two counts of first degree child molestation, one count of second degree child molestation, and one count of sexual exploitation of a minor. Division Two of the Court of Appeals affirmed his convictions finding that the trial court did not err by rejecting Tarabochia's affidavit of prejudice and that Tarabochia did not receive ineffective assistance of counsel. We affirm.

I
On May 31, 2000, the State filed an information charging Tarabochia with child molestation and child exploitation.[1] Tarabochia *643 was summoned to appear before the Wahkiakum County Superior Court on June 5, 2000. He did not appear, but on request of his counsel, John Hays, the trial court continued the arraignment to June 12, 2000.
Tarabochia appeared in court with his attorney on June 12, 2000, and entered pleas of not guilty to each of the six counts.[2] The court set conditions of release, which included the requirement that Tarabochia post bond in the amount of $100,000. Because of the requirement of posting bond, Hays returned Tarabochia's retainer.[3] The trial court then appointed Hays as Tarabochia's public counsel and Hays accepted. The court proceeded to set July 17, 2000 as the omnibus hearing date and August 16, 2000 as the trial date. Tarabochia agreed to waive his right to a speedy trial.
Five weeks later, on July 19, 2000, Tarabochia filed an affidavit of prejudice against the trial judge, the Honorable Joel Penoyer. The State responded with a motion to strike the affidavit as untimely, asserting that since Wahkiakum County has only one superior court judge, the filing of an affidavit of prejudice must take place on the date that the case is called to be set for trial.[4] At the hearing on the motion to strike, Tarabochia argued that while he had limited personal knowledge of the court system and the trial judge, some time after the June 12 hearing, his family told him that he would be unable to receive a fair trial in front of Judge Penoyer. The trial court rejected Tarabochia's affidavit of prejudice as untimely, stating that the trial date was set on the morning of June 12 and that Tarabochia had the rest of the day to file an affidavit of prejudice.[5]
Tarabochia next appeared before the court on October 9, 2000.[6] At this hearing, Tarabochia pleaded guilty to an amended information charging him with two counts of first degree child molestation, one count of second degree child molestation, and one count of sexual exploitation of a minor. Also at this hearing, Tarabochia requested a 30-day continuance so that he could complete a psychosexual evaluation prior to sentencing and continue to work as a commercial fisherman until the season ended. The court agreed not to sign the plea papers until October 16, 2000, allowed Tarabochia one-week to report for confinement, and granted Tarabochia work release, over the State's objection.[7]
At Tarabochia's sentencing on December 4, 2000, the victim testified and asked the court to impose a Special Sexual Offender Sentencing Alternative (SSOSA), since the victim felt her father would benefit from treatment rather than incarceration. The State sought a sentence of 144 months, which is at the higher end of the standard sentencing range. The State argued that SSOSA was inappropriate because Tarabochia *644 had failed to follow jail rules and he could not be trusted to follow through with the SSOSA treatment. The trial court imposed a sentence of 126 months of incarceration finding that the SSOSA six-month program was inadequate in the circumstances.
Tarabochia appealed his convictions to Division Two of the Court of Appeals. He argued that the trial court erred by rejecting his affidavit of prejudice and that he received ineffective assistance of counsel. The Court of Appeals affirmed his convictions in an unpublished opinion.[8] Tarabochia filed a petition for review with this court, which we accepted. State v. Tarabochia, 149 Wash.2d 1001, 70 P.3d 964 (2003).

Affidavit of Prejudice

Standard of Review
The interpretation of a statute is a question of law, which is reviewed de novo by this court. Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003). "If the statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent." Id. An unambiguous statute should not be subjected to judicial construction. Fraternal Order of Eagles, Tenino Aerie v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002).

Interpretation of RCW 4.12.050
Tarabochia claims that the Court of Appeals erred in affirming the trial court's rejection of his affidavit of prejudice. Under RCW 4.12.040, every party has the right to a change of judge as long as the requirements of RCW 4.12.050 are satisfied. Marine Power & Equip. Co. v. Indus. Indem. Co., 102 Wash.2d 457, 459, 687 P.2d 202 (1984). RCW 4.12.050 provides in pertinent part:
Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge: PROVIDED, That such motion and affidavit is filed and called to the attention of the judge before he shall have made any ruling whatsoever in the case, ... and before the judge presiding has made any order or ruling involving discretion ... and in any event, in counties where there is but one resident judge, such motion and affidavit shall be filed not later than the day on which the case is called to be set for trial[.]
(Emphasis added.)[9]
The italicized portion of RCW 4.12.050 cited above is known as the one-judge county rule. The purpose of the one-judge county rule is to assure the trial court sufficient time to arrange for a visiting judge while avoiding speedy-trial problems. State v. Cockrell, 102 Wash.2d 561, 566, 689 P.2d 32 (1984); State v. Norman, 24 Wash.App. 811, 813, 603 P.2d 1280 (1979). Underlying this requirement of filing an affidavit of prejudice on or before the date the case is called to be set for trial is the fact that in a one-judge county the defendant is aware of the judge who will hear his casethe only judge in the county. State v. Waters, 93 Wash.App. 969, 974-75, 971 P.2d 538 (1999).
Although it is undisputed that Wahkiakum County is a one-judge county and the statute clearly mandates a timeliness requirement in one-judge counties, Tarabochia argues that the statute should be construed liberally and cites Norman for support. The Court of Appeals found that Norman is inapplicable to Tarabochia's case because it is factually distinct.
In Norman, the issue before the Court of Appeals was whether the trial judge erred in refusing to honor an affidavit of prejudice that was filed in a one-judge county after the *645 date the case was called to be set for trial. The defendant's trial was called for setting the same day he was arraigned and the same day that counsel was appointed for him. Norman, 24 Wash.App. at 812, 603 P.2d 1280. The defendant was arraigned by a court commissioner and mistakenly assumed that the commissioner would also preside over his trial. Id. Three weeks later, after discovering his trial would be presided over by the same judge whom he had appeared before in another matter, the defendant filed an affidavit of prejudice. Id. at 812-13, 603 P.2d 1280. The defendant's affidavit was filed two weeks before his trial was to begin. Id. The trial court rejected the affidavit of prejudice as untimely, but the Norman court reversed finding that the purpose of the timeliness requirement in a one-judge county is to "assure the court sufficient time to arrange for a visiting judge to preside over a defendant's trial." Id. at 813, 603 P.2d 1280. That purpose had been served. The Norman court opined that a "careful reading" of RCW 4.12.050 suggests that the legislature did not foresee that a defendant's arraignment and trial setting in a criminal case would occur at the same hearing:
The statute states that the defendant shall file an affidavit of prejudice "before [the judge has] made any ruling whatsoever in the case ...[.]" But the statute further provides that the "arraignment of the accused... shall not be construed as a ruling ... within the meaning of this proviso...[.]" Hence, we conclude that the legislature believed that some time would elapse between the arraignment and the trial setting.
24 Wash.App. at 813, 603 P.2d 1280.[10] Following this interpretation, the Norman court held that the defendant should have been given time to consult with his attorney and therefore be given leeway to file his affidavit of prejudice after the date the case was called to be set for trial.
Arguably, the Norman opinion provides support for the argument that RCW 4.12.050 is not to be applied literally in all instances. Although the defendant in Norman filed his affidavit of prejudice outside the time limit of the trial setting date, the Norman court found that the filing was timely because there was ample time to allow the court to arrange for a visiting judge and the speedy trial right of the defendant had been waived. Id. at 814, 603 P.2d 1280. Norman excuses strict compliance with the statutory provisions if there is enough time to arrange for a new trial judge and the speedy trial rule is not compromised. In such circumstances, according to Norman, an affidavit of prejudice in a one-judge county will be considered timely filed so long as there has been no discretionary ruling. However, the Norman interpretation of RCW 4.12.050 is at odds with the plain language of the statute.
We find that RCW 4.12.050 is unambiguous and clear on its face. The rule is mandatory and does not allow for exceptions. This is evidenced by the language, "in any event." See RCW 4.12.050. It is unequivocal that in one-judge counties, an affidavit of prejudice must be filed on or before the date the case is called to be set for trial. To create exceptions blurs the distinction between multijudge counties and one-judge counties that RCW 4.12.050 recognizes.
The Norman opinion was cited in this court's decision in Cockrell. In Cockrell, the defendants were arraigned in Stevens County, which is a two-judge county. 102 Wash.2d at 563, 689 P.2d 32. At their omnibus hearing, one of the judges recused himself because he knew the defendants personally. Id. However, the judge granted the defendants' motion for continuance of the trial setting date and accepted defendants' speedy trial waiver. Id. at 563-64, 689 P.2d 32. Several weeks after the defendants' trial date had been set, their daughter appeared in another matter before the judge who was scheduled to hear the defendants' case. Id. at 564, 689 P.2d 32. One month after that testimony, the defendants filed an affidavit *646 of prejudice fearing the judge would be biased because of his prior contact with their daughter. Id. The trial court rejected the defendants' affidavit ruling it was untimely since, by virtue of the earlier recusal, the court had become a de facto one-judge county, and thus the requirement of RCW 4.12.050 applied. This court reversed and, citing to Norman, found that the purpose of the one-judge county rule is to avoid problems that may arise because of the speedy trial rule. Id. at 565-66, 689 P.2d 32. Because the Cockrell defendants had waived their speedy trial rights and had permitted enough time to secure an alternate judge, this court found that application of the one-judge county rule was inappropriate and the trial court was required by RCW 4.12.040 to grant their affidavit of prejudice. Id. at 566-67, 689 P.2d 32 (declining the State's invitation to create a de facto one-judge county rule on the facts of this case). This court properly treated defendants' affidavit as being filed in a multijudge county rather than imposing the one-judge county rule. Since Stevens County is a multijudge county, defendants' affidavit of prejudice was timely since it was filed before a discretionary ruling was made. Thus, we find that Cockrell does not necessarily render Norman controlling on these facts.
However, even if we were to find Norman persuasive authority, the Court of Appeals properly distinguished the present case from Norman finding that the cases were factually distinct. Unlike the defendant in Norman, who mistakenly believed the commissioner who conducted his arraignment would be the one to preside over his trial, Tarabochia was put on notice as to who would preside over his trial since Judge Penoyer conducted his arraignment. Further, unlike Norman, Tarabochia was able to consult with his attorney for weeks before his arraignment date.[11] The Norman court found that the defendant's affidavit was timely because at the date of trial setting, the defendant had not had time to consult with his attorney. Norman, 24 Wash.App. at 812-13, 603 P.2d 1280. This was not the case here. Therefore, it is clear to us that Tarabochia was aware of who would be the judge in his case. As the Court of Appeals observed, after the trial date was set Tarabochia had the rest of the day to file the affidavit, which he failed to do.
RCW 4.12.050 is unambiguous. In one-judge counties, an affidavit of prejudice will be considered timely only if it is filed on or before the date the case is called to be set for trial. Because Tarabochia failed to timely file his affidavit of prejudice, the trial court did not err by rejecting his affidavit on the grounds that it was untimely.

Ineffective Assistance of Counsel
Tarabochia argues that his attorney provided ineffective assistance because the attorney failed to timely file the affidavit of prejudice on or before the date the case was called to be set for trial. He also argues that his attorney failed to object to the State's reference to his jail infraction during sentencing. The Court of Appeals found no ineffective assistance of counsel. We agree.
In order to establish ineffective assistance of counsel, Tarabochia must show (1) that his attorney's performance was deficient and not a matter of trial strategy or tactics, and (2) that he was prejudiced. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If either part of the test is not satisfied, the claim fails. Hendrickson, 129 Wash.2d at 78, 917 P.2d 563.
Tarabochia claims that his attorney had the entire afternoon after the morning hearing to file the affidavit of prejudice but failed to do so. Yet, Tarabochia did not allege the possibility of prejudice until after his trial date was set. If his attorney was unaware of the possible prejudice at the time the trial setting occurred, he could not possibly have filed an affidavit of prejudice at that time. Therefore, Tarabochia's first claim of ineffective assistance of counsel is unsupported.
Tarabochia also claims that his counsel was deficient in failing to object to the *647 prosecutor's reference to a jail infraction, a matter outside the record, during sentencing. This failure, Tarabochia argues, prohibited him from receiving the SSOSA alternative. However, as the record shows, counsel made a tactical decision to admit the infraction since he viewed the infraction as insignificant:
For the purpose of the record, we haven't admitted the particular infraction but I will right now before the Court so it doesn't become an issue in the future about something that was alleged that we didn't have a hearing about. The infraction involved him walking out of his cell and not having the striped overshirt over his undershirt. That was the infraction. And he was told not to do that, he forgot, he walked out. And they took care of that in the jail. That was the infraction.
That having been said in response to the Prosecution, I would like to bring up some points to the Court for its consideration.
December 4, 2000 Record of Proceedings (12/4 RP) at 37.
Tarabochia fails to establish prejudice. When sentencing Tarabochia, the trial judge cited numerous reasons for denying Tarabochia's request for the alternative SSOSA sentence independent of the admitted infraction.[12] The jail infraction was clearly not the sole reason for the denial of the SSOSA sentence.

II
The filing of an affidavit of prejudice is governed by RCW 4.12.040 and 4.12.050. The timeliness requirement in one-judge counties mandated by RCW 4.12.050 is clear and unambiguous. Tarabochia failed to comply with the terms of the statute and has also failed to substantiate his claim of ineffective assistance of counsel.
The Court of Appeals is affirmed.
ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, OWENS, and FAIRHURST, JJ., concur.
CHAMBERS, J. (concurring).
I concur with the majority in result. Affidavits of prejudice must be received in a timely fashion. To provide a meaningful opportunity to exercise an affidavit of prejudice, defendants must also have adequate time to consult with counsel. See State v. Norman, 24 Wash.App. 811, 813, 603 P.2d 1280 (1979).[1] Since David Tarabochia had adequate time to consult with counsel before the deadline to file the affidavit, the Norman exception does not apply.
I write separately to express my view that justice requires a liberal, not strict, interpretation of RCW 4.12.040 and .050 in counties with one resident judge. Chapter 4.12 RCW treats residents of one-judge counties differently from multiple-judge counties. On its face, the statute arguable affords the citizens and residents of one-judge counties less protection. The difference in treatment may be reasonable and necessary for the sound administration of justice. However, the same principles of sound administration of justice require a liberal application of the statute.
Accordingly, I would continue to follow the principles laid down in Norman and give the chapter a liberal interpretation. With that reservation, I concur.
SANDERS, J., concurs.
NOTES
[1] These charges arose from incidents occurring in 1993 and 1996, during which Tarabochia exposed his daughter's genitals while she slept and videotaped the events.
[2] The information charged Tarabochia with three counts of first degree child molestation, two counts of second degree child molestation, and one count of sexual exploitation of a minor.
[3] June 12, 2000 Record of Proceedings (6/12 RP) at 11 (John Hays: "Frankly, I have a check in my pocket and I'm going to have to give it back to him. There's no way in the world he's going to be able to afford me or any other attorney if he can't work[.]").
[4] See RCW 4.12.050.
[5] July 31, 2000 Record of Proceedings (7/31 RP) at 11 (Judge Penoyar: "The case was called for trial onto be set for trial on June 12th. The Defendant had an attorney, he knew who the judge was going to be, he had the rest of that day to file his Affidavit if he wanted to. I don't think you can ambush the Defendant and quickly say call to set for trial and give them 30 seconds to file their Affidavit but the notice of trial setting was filed at 12:42 by the Clerk. It probably happened somewhat sooner than that in court. I think he's lost his right to file the Affidavit, so I don't think it's timely.")
[6] At Tarabochia's request, the previous trial date of August 16, 2000 was continued to October 16, 2000. See 7/31 RP at 17-18.
[7] Tarabochia's work release privileges were revoked on October 30, 2000. The trial court allowed Tarabochia to be on work release during daylight hours only. Further, he was only allowed to leave custody one hour prior to any scheduled opening of the fishing season and he was required to return to custody within one hour after the close of the season. However, on October 20, 2000, the fishing season closed at noon, but Tarabochia did not return to the jail until 7:40 p.m. October 30, 2000 Record of Proceedings (10/30 RP) at 7-8. Based on his failure to return to jail on time, the trial court revoked Tarabochia's work release privileges. Id. at 8-12.
[8] State v. Tarabochia, No. 26744-6-II, 112 Wash. App. 1019, 2002 WL 1354248 (Wash.Ct.App. June 21, 2002).
[9] We note that RCW 4.12.050 states that arraignment, fixing bail, or setting a trial date do not constitute discretionary actions. Further, in multijudge counties, the only limitation is that the affidavit of prejudice must be filed before the judge makes a discretionary ruling.
[10] For its support, the Norman court cites to one case that was decided before the legislature required a defendant to file an affidavit of prejudice in a one-judge county at or before the time of trial setting. Such a broad interpretation undermines the rationale for the one-judge county rule, which is that in a one-judge county the defendant is aware of who will try the case. See Waters, 93 Wash.App. at 974-75, 971 P.2d 538.
[11] See 6/12 RP at 6 (Attorney John Hays: "[Tarabochia] knew what the charges were when he walked into court. He and I have been talking about them for three or four weeks.").
[12] The trial court's reasoning for denying the SSOSA sentence included the lateness of full disclosure of offenses, deception on his original polygraph test, and Tarabochia's failure to comply with court mandated conditions of work release. 12/4 RP at 52-53, 55. The judge also stated that he found a "pattern ... of deception." Id. at 53.
[1] At oral argument, the State conceded that it was not unusual in Wahkiakum County for the arraignment, the appointment of counsel, and the setting of a trial date to occur at a single hearing.